wards, at April term 1811, it was referred, by the consent
of the parties, and by order of the court, to *Robert Oliver*
and *William Cole*, who acted as arbitrators, and who
awarded that there was due to the plaintiffs the sum of
$5,643 51, on which award a judgment was rendered,
which has been since satisfied and paid. And the defen-
dants further proved, that the arbitrators awarded to the
plaintiffs the full amount of the money then due and ex-
pended by them, with interest, in making the purchase of
the cotton. And that the arbitrators, in forming their
award, did not take into consideration the damages on the
said protested bills. The defendants then moved the
court to direct the jury, that if they believed these facts,
the plaintiffs were not entitled to recover; and the Court,
[*Nicholson*, Ch. J. and *Bland* A J.] gave the direction.
The plaintiffs excepted; and the verdict and judgment
being against them, they appealed to this court.

The cause was argued before BUCHANAN, EARLE, JOHN-
SON, and MARTIN, J. by

*Harper*, for the Appellants, and by
*W. Dorsey*, for the Appellees.

JUDGMENT AFFIRMED.

———————

MILLER vs. HONEY.                              JUNE (E. S.)

On a plea of *non
est factum*, the sub-
scribing witness to
the bill obligatory
proved his own at-
testation, but had
no recollection of
having seen the de-
fendant sign, seal
and deliver the bill;
that from seeing his
hand-writing as a
witness to the bill,
and from his having
lived with the
plaintiff as a clerk
at the time of its
execution, and
from being in the
habit of attesting
such instruments
for the plaintiff, he
believed the de-
fendant had signed,
sealed and deliver-
ed it—Held, that
the testimony was
competent and suf-
ficient to prove the
due execution of
the bill

APPEAL from *Kent* County Court. Debt upon a bill ob-
ligatory for $337 80. The defendant, (now appellant,)
pleaded *non est factum* specially—that he could not read
writing, and that the consideration for which the bill was
given, was stated to him to be $200, &c. Issue joined.

1. At the trial the plaintiff called the subscribing wit-
ness to the bill, who proved that the attestation was in his
hand writing, but that he had no recollection of having
seen the defendant sign, seal and deliver the bill. That
from seeing his hand-writing, and from his having lived
with the plaintiff, at the time of the execution of the bill,
as a clerk, and from being in the habit of attesting such
instruments for the plaintiff, he believed the defendant had
signed, sealed and delivered the bill. To this testimony
the defendant objected; but the Court, [*Earle*, Ch. J. and
*Purnell* and *Worrell*, A. J ] determined that it was com-
petent and proper, and permitted it to be offered to the ju-
ry. The defendant excepted.

2. The defendant then prayed the court to direct the
jury, that the evidence offered was not sufficient to prove
the due execution of the bill. The court refused to give
the direction. The defendant excepted; and the verdict
and judgment being against him, he appealed to this court.

1817.

Selby
vs
Williss

The cause was argued before CHASE, Ch. J. and JOHN-
SON, MARTIN, and DORSEY. J.

*Chambers*, for the Appellant, cited *Abbot vs. Plumbe*,
1 *Doug.* 216. *Call vs. Dunning*, 4 *East.* 53. *Barnes vs.
Trompowsky*, 7 *T. R.* 266, *(note c.)* *Cooke vs. Woodrow*,
5 *Cranch*, 13. *Peake's Evid.* 96, 97, 98. *Grellier vs.
Neale, Peake's N. P.* 146; and *Lowe vs. Jolliffe*, 1 *W. Blk.
Rep.* 365.

*J. E. Barroll*, for the Appellee.

JUDGMENT AFFIRMED.

---

JUNE (E. S.)                    SELBY's Lessee vs. WILLISS.

J S, by his will in 1790, devised certain lands to his two sons J and D, and his three daughters N, P and B, in trust for his son W and he authorised the trustees to sell all or any part of the lands in order to buy other lands, with the money arising from such sale, for the benefit of his son W, as should appear to a majority of his trustees to be most for his W's benefit; and if his son W should die without lawful issue, he then gave the lands to his above mentioned five children. In 1793 W, J, D and N, sold the lands to J W in fee simple, and on the purchase money bei g paid, they conveyed the lands to him When this deed was executed, J, D, W, N, P, and B, were all alive and of full age, and N w s at that time a *feme covert*, and afterwards died leaving four children. W died intestate, and without issue, before the death of N. On an ejectment brought by the heir of one of the trustees against J W, for one undivided twentieth part of the lands—*Held*, that he w s not entitled to recover.

APPEAL from *Worcester* County Court. Ejectment for
one undivided twentieth part of the tracts of land, called
*Chance, John's Purchase, Wild Cat*, and *Addition to Wild
Cat*. Defence was taken on warrant, and the general is-
sue pleaded. The facts as agreed upon were these: A
certain *John Selby* died seized of the lands in question,
having by his will, dated the 13th of November 1790, de-
vised as follows: "*Item*, I give and bequeath unto my two
sons *James* and *Daniel*, and to my three daughters *Nancy,
Polly* and *Betty*, the land I bought of *John Sturgis*, and
all my land which lies on the north side of *Caulker's*
Creek; also one negro woman called *Hannah*, and her two
children, in trust for my son *William*, and his heirs; and
I do direct, and do hereby authorise and empower my said
trustees, and their heirs, to rent out the aforesaid lands,
and hire out the aforesaid slaves, for the use and benefit
of my said son *William*, or his heirs, or to sell all or any
part of the said lands in order to buy more lands, with
the money arising from such sale, for his benefit, as shall
appear to a majority of my said trustees to be most to his
benefit. I also empower my said trustees, or a majority
of them, to settle my said son *William*, on any part of
the aforesaid lands, if they in their discretion may think
it advisable. And if my said son *William* shall have chil-
dren by any marriage, I then empower my trustees, or a
major part of them, to convey the aforesaid lands and ne-
groes to such of my said son *William's* children as they,
or a majority of them, may think proper; but if my said
son *William* shall die without lawful issue, I then give the
lands and negroes aforesaid devised in trust as aforesaid.
to my five children *James, Daniel, Nancy, Polly* and *Bet-
ty*, to be equally divided between them and their heirs
for ever." On the 31st of December 1793, *William,
James, Daniel* and *Nancy*, sold the lands mentioned in
this will, to a certain *Jabez Williss*. in fee simple, for the
sum of £150 15 0, which sum being paid by *Williss* to